**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RAY SCOTT HEID**, *et al.*,

      **Plaintiff,**

                         **Case No. 2:20-cv-901**
      **v.**                    **Chief Judge Algenon L. Marbley**
                         **Magistrate Judge Elizabeth P. Deavers**

**LT. TODD ADERHOLT**, *et al.*,

      **Defendants.**

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court upon review of the Properly Served and Named Defendants' Motion to Dismiss Plaintiffs' Complaints (ECF Nos. 1, 25). (ECF No. 39 (the "Motion to Dismiss").) On September 27, 2021, Plaintiffs filed an Opposition brief. (ECF No. 48.) On November 30, 2021, Interested Party State of Ohio filed a Reply brief on behalf of Defendants. (ECF No. 60.) For the following reasons it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

### I.      PROCEDURAL BACKGROUND

This is far from the first time Plaintiffs have pursued claims before this Court. Although the Undersigned is disinclined to revisit past cases, doing so is necessary in this instance, as this lawsuit is just the latest iteration of a series of civil rights lawsuits brought by Plaintiffs over the past thirteen years. Indeed, Plaintiffs affirmatively acknowledge that this action is related to the "previous and ongoing" cases they have filed in this Court: *Damron, et al. v. Jackson*, Case No. 2:09-cv-50 ("*Jackson*"); *The Christian Separatist Church Society of Ohio, the Wife of Christ, Prosopopeia, et al. v. Ohio Dep't of Rehab. and Corrs. et al.*, Case No. 2:15-cv-2757; *Damron, et*

*al. v. Dodrill, et al.*, Case No. 2:17-cv-337 ("*Dodrill*"); and *Heid, et al. v. Mohr, et al.*, Case No. 2:18-cv-311 ("*Mohr*").  (ECF No. 48 at PAGEID # 571.)  The Undersigned also takes judicial notice of a fifth related case filed by Plaintiff Heid, *Heid v. Hooks*, Case No. 2:17-cv-650 ("*Hooks*").

Since Plaintiffs filed the *Jackson* case on March 19, 2009, their six cases (including the subject action) have cumulatively contributed over 850 filings to the Court's docket – which amounts to an average of more than one docket entry each week for the past thirteen years. Which is to say, the events underlying the subject action did not arise in a vacuum, but rather in the context of Plaintiffs' history of litigation.  Plaintiffs' own filings openly acknowledge the overlapping nature of their claims, as Plaintiffs frequently incorporate by reference various arguments, filings, and exhibits from their prior litigation.  While Plaintiffs' claims have been framed many ways over the years, Plaintiffs have consistently alleged infringement of their Constitutional rights by Ohio Department of Rehabilitation and Correction ("ODRC") officials. Indeed, such allegations form the basis of the subject lawsuit.

This case was filed on February 9, 2020.  (ECF No. 1.)  In their 97 page, 343-paragraph Complaint,[1] Plaintiffs generally allege civil rights deprivations related to, *inter alia*, Defendants' confiscation and/or prohibition of certain Christian Separatist ("CS")-related literature, publications, CDs, symbols, and messages.  (ECF No. 1.)  On February 4, 2021, Plaintiffs filed a 28 page, 153-paragraph Supplemental Complaint, generally alleging the same civil rights

---

[1] Plaintiffs' substantive allegations and requests for relief end after sixty-two (62) pages, and the remainder of Plaintiffs' Complaint sets forth an Application for Injunctive Relief and Temporary Restraining Order.  (ECF No. 1 at PAGEID ## 63-96.)  On October 20, 2021, Plaintiffs filed a separate Application for Injunctive Relief and Temporary Restraining Order.  (ECF No. 52.)  On November 1, 2021, the Court held a videoconference pursuant to Local Rule 65.1, and on November 3, 2021, the Court denied Plaintiffs a temporary restraining order.  (ECF No. 56.)

deprivations.  (ECF No. 25.)  On July 22, 2021, Defendants filed the subject Motion to Dismiss, seeking to dismiss Plaintiffs' Complaint and Supplemental Complaint in their entirety.  (ECF No. 39.)  On September 27, 2021, Plaintiffs filed an Opposition.  (ECF No. 48.)  On November 30, 2021, Defendants filed a Reply.  (ECF No. 60.)  The Motion is thus ripe for judicial review.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd*., *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on

a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc*., 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

The Court holds pro se complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). While the standard for construing pro se complaints is a liberal one, the complaint still must state a claim such that "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. General Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989)). A pro se pleading must still "provide the opposing party with notice of the relief sought, and it is not within the purview of the district court to conjure up claims never presented." *Id.* at 977.

### III.    ANALYSIS

Plaintiffs' Complaint sets forth eighteen causes of action, and Plaintiffs' Supplemental Complaint sets forth an additional thirteen causes of action.  (ECF Nos. 1-1, 1-2 at PAGEID ## 46-55, ¶¶ 193-212; ECF No. 25 at PAGEID ## 314-318, ¶¶ 136-150.)  In their Motion to Dismiss, Defendants break Plaintiffs' allegations into the following eleven different types of claims with an implicit concession that some of the claims may overlap multiple categories:  (1) publication screening committee claims; (2) confiscation and prohibition claims; (3) correspondence withholding claims; (4) retaliation claims; (5) conspiracy claims; (6) equal protection claims; (7) access to court claims; (8) religious interference claims; (9) supervisory claims; (10) personal property claims; and (11) Ohio Administrative Code claims.  (*See generally* ECF No. 39.)

Rather than addressing each of Plaintiffs' thirty-one causes of action in turn, or each of Defendants' eleven types of claims in turn, the Court will analyze Plaintiffs' claims in a manner generally consistent with the groupings proposed by Defendants, but with some additional curation in an attempt to discuss similar claims together.  First, however, the Court must address a threshold procedural issue raised by Plaintiffs in their Opposition.

### A.    Non-Waiver of Rule 12 Defenses

In their Opposition, Plaintiffs argue that "Defendants' Motion to Dismiss is devoid of any refutations concerning Defendants Aderholt; Agee; Bratton; Caradine; Crawford; John/Jane Doe, Lawyer; John/Jane Doe, Lawyer; John Doe, Vault Supv.; John Doe, Mailroom staff; John Doe, RIB; John/Jane Doe(s), PSC; Donaldson; Ehirick; Frederick; Friend; Good; Huffman; Hunyadi; Jackson-Mitchell; Jennings; Koontz; Letts; Myers; Niceswanger; Rosengarten; Schumacher; Shively; Smith; Ward; Wiggins; Windom; and Wright."  (ECF No. 48 at PAGEID # 571.) Plaintiffs argue that because those Defendants "failed to respond by answering the Complaint or

raise a defense in the Rule 12 motion, they have tacitly acquiesced to the claims asserted against them," and that they "have waived all forms of defense raised within a Rule 12 motion or which should have been raised by a responsive pleading."  (*Id.* at PAGEID # 572.)

The Court disagrees.  First, the subject Motion to Dismiss is expressly brought only by those "properly served and named Defendants."  To the extent Plaintiffs believe that any (or all) of the aforementioned Defendants have not moved to dismiss, then Plaintiffs are conceding that Defendants have not been properly served – well past the 90 days prescribed by Federal Rule of Civil Procedure 4(m).  *See* Fed. R. Civ. P. 4(m).  In that case, the Court must dismiss Plaintiffs' claims against such Defendants or order that service be made on such Defendants within a specified time pursuant to Federal Rule of Civil Procedure 4(m).  *Id.* ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Further, because Plaintiffs have named former or current ODRC employees and other state agents as Defendants in this action, the Court finds no issue with the Ohio Attorney General's appearance on behalf of all Defendants, to protect the State's interests.  *See* Ohio Rev. Code. § 109.361.  Accordingly, the Court rejects Plaintiffs' argument and finds that Defendants have not waived their Rule 12 defenses.

## B.  Publication Screening Committee Claims

Plaintiffs' Complaint begins with allegations that Defendants have improperly withheld *Race Life of the Aryan Peoples* ("*Race Life*"), a book which Plaintiff Heid ordered online.  (ECF No. 1 at PAGEID ## 14-15, ¶¶ 51-54.)  While Plaintiffs affirmatively concede that Defendants withheld the *Race Life* "because Amazon is not considered an approved vendor" pursuant to ODRC Policy 5120-9-31, they allege that Defendants "selectively enforced this custom."  (*Id.* at PAGEID # 14, ¶¶ 52-53.)  Specifically, Plaintiff Heid alleges that he received at least one other

book from Amazon, but Defendants improperly only withheld *Race Life* because it "had an appeal to Aryan-American culture."  (*Id.* at PAGEID # 14, ¶ 53.)

Plaintiffs also allege that Defendants have improperly withheld a book entitled *Rise of the Aryans: How Whites Influenced & Established Global Civilization* ("*Rise of the Aryans*") from Plaintiff Damron.  (*Id.* at PAGEID # 15, ¶¶ 55-57.)  Plaintiffs affirmatively state that Defendants informed Plaintiff Damron that *Rise of the Aryans* was being withheld "due to its title," a decision which Plaintiffs allege "is in violation of ODRC policies" and "is based on a discriminatory intent to deprive Aryan peoples of equal privileges within [the] ODRC."  (*Id.* at ¶ 56.)  Then, in their Supplemental Complaint, Plaintiffs set forth additional allegations that Defendants have improperly withheld "publications which appeal to Aryan Americans" from Plaintiff Damron, including copies of *Rise of the Aryans* and another publication entitled "Werewolfe of the Reich."  (ECF No. 25 at PAGEID ## 308-314, ¶¶ 79-134.)  Plaintiffs further allege that by withholding such publications, Defendants "selectively enforced the mail rules and procedures with a malicious intent to discriminate against [Plaintiff] Damron in the use of policy contracts because of his Aryan ethnicity."  (*Id.*)

In their Motion to Dismiss, Defendants argue that "in a very similar case . . . the [Sixth Circuit] Court of Appeals disagreed with the very same contentions Plaintiffs are asserting here." (ECF No. 39 at PAGEID # 453.)  Specifically, Defendants cite the Sixth Circuit's recent decision in *Bethel v. Jenkins*, 988 F.3d 931 (6th Cir. 2021), which Defendants maintain held that "1) due to the prison's security concerns the inmate's family or friends could only place orders on his behalf through an approved vendor; and 2) that in the event an inmate received a book ordered from an unapproved source he could either return it to the vendor at his own expense or have it destroyed."  (*Id.* (citing *Bethel*).)  Defendants argue that "[s]ince this case is on all fours with [the

Sixth Circuit's] decision . . . Plaintiffs' allegations regarding the denial of Aryan-American publications . . . should be dismissed."  (*Id.* at PAGEID ## 453-454.)

In their Opposition, Plaintiffs first argue that Defendants' argument "pertains solely to Plaintiff Heid's claims," as Defendants failed to address or oppose Plaintiff Damron's claims. (ECF No. 48 at PAGEID # 574.)  The Court agrees with Plaintiffs, as neither the Motion to Dismiss nor the Reply addresses Plaintiffs' claims regarding *Rise of the Aryans* or "Werewolfe of the Reich."  Rather, Defendants' Motion to Dismiss only addresses these claims "[t]o the extent [they] are grounded on guidelines set forth in the Ohio Administrative Code."  (ECF No. 39 at PAGEID ## 479-480.)  Defendants argue that because the Ohio Administrative Code does not provide a private cause of action for alleged violations thereof, Plaintiffs' claims must fail "to the extent that [they] are predicated on alleged violations of the Ohio Administrative Code."  (*Id.*)

But Plaintiffs' claims regarding *Rise of the Aryans* or "Werewolfe of the Reich" are not predicated on alleged violations of the Ohio Administrative Code.  Rather, they are predicated on violations of the First, Fifth, and Fourteenth Amendments of the United States Constitution, and on 42 U.S.C. § 1981.  (*See* ECF No. 1 at PAGEID ## 46-55; *see also* ECF No. 25 at PAGEID ## 314-318.)  Indeed, none of Plaintiffs' thirty-one (31) causes of action are based on violations of the Ohio Administrative Code.  In their Opposition brief, Plaintiffs explain that their citations to the Ohio Administrative Code are simply "to demonstrate that the Defendants have violated their own policies and procedures to show that the Defendants have an improper objective."  (ECF No. 48 at PAGEID # 604.)  Defendants do not address the issue in their Reply brief.

Defendants have therefore not submitted any viable arguments in favor of dismissing Plaintiffs' claims regarding *Rise of the Aryans* or "Werewolfe of the Reich."  The Court is limited to the arguments in the subject briefing, and it will not create arguments in favor of dismissal

8

where Defendants failed to do so.[2] Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **DENIED** as it pertains to Plaintiffs' claims pertaining the withholding of *Rise of the Aryans* and "Werewolfe of the Reich" from Plaintiff Damron.

As for their allegations pertaining to the withholding of *Race Life* from Plaintiff Heid, Plaintiffs concede that *Bethel* "is on par with the fact that the books were sent by Amazon, an 'unapproved' vendor," but argue that *Bethel* "failed to raise the issue of softcover books [versus] hardcover books; and did not point to *Bell v. Wolfish*, 441 U.S. 520 (1979) to establish the distinctions in security concerns as to those type of books." (ECF No. 48 at PAGEID # 575.) Plaintiffs also argue that *Bethel* is inapplicable because here, Plaintiff Heid ordered "another non religious book from Amazon which was allowed," which allows Plaintiff Heid to "prove [that] the process surrounding the rejection of [*Race Life*] is unconstitutionally applied." (*Id.*) To this end, Plaintiffs argue that "Defendants' exclusion of one softcover book from Amazon while permitting other softcover books from Amazon cannot be justified," and "the disparity in

---

[2] To this end, the Undersigned rejects Defendants' implicit suggestion that the Court's familiarity with Plaintiffs' previous litigation and/or Plaintiffs' personal beliefs should somehow foreordain the Court's judgment in the subject action. (*See* ECF No. 39 at PAGEID # 451 ("Since the Court is well aware of Plaintiffs' segregationist racial beliefs, the undersigned will not waste judicial resources by recounting them here. Suffice it to say that . . . there is no constitutional or statutory right to the claims they assert.").) Suffice it to say, the burden is on Defendants to prove that Plaintiffs have failed to state a claim at this stage of the litigation. *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017) ("The defendant has the burden of showing that the plaintiff has failed to state a claim for relief.") (quoting *Treesh*, 487 F.3d at 476); *see also Mohr*, 2019 WL 2502715, at *9 (S.D. Ohio June 17, 2019), *report and recommendation adopted*, No. 2:18-CV-311, 2020 WL 1933577 (S.D. Ohio Apr. 22, 2020) ("[I]t would be impermissible for the Court to make Defendants' argument for them" with respect to related Motion to Dismiss briefing). Because Defendants have failed to meet their burden regarding Plaintiffs' claims related to *Rise of the Aryans* and "Werewolfe of the Reich," those claims should survive dismissal at this stage. To be clear, however, in reaching this conclusion the Undersigned expresses no opinion as to whether Plaintiffs may ultimately prevail on the merits of these claims.

treatment between the[] two books can only be attributed to the difference in the content of expression contained therein." (*Id.* at PAGEID ## 577-578.)

The Court disagrees with Plaintiffs and finds that Defendants' alleged withholding of *Race Life*, on the basis that books from unapproved vendors "would not be allowed," did not violate Plaintiff Heid's constitutional rights. Taking Plaintiffs' allegations as true, their claim is nothing more than that Defendants correctly applied ODRC policy 5120-9-19[3] by refusing to provide Plaintiff Heid with *Race Life* because it was from an unapproved vendor. (ECF No. 1 at PAGEID # 14, ¶ 52 (Defendants "held that because Amazon is not considered an approved vendor, books from them would not be allowed.").) Plaintiffs affirmatively allege that Plaintiff Heid ordered *Race Life* from Amazon, an unapproved vendor. They therefore only take aim at the underlying ODRC policy, alleging that it "subvert[s] [Plaintiff] Heid's due process." (*Id.* at ¶¶ 51-52; *see also* ECF No. 48 at PAGEID # 577 (Arguing that "the defense that the book came from an unapproved vendor/distributor does not serve any compelling interest.").)[4]

Plaintiffs' argument is not well taken, however, because such "publisher only" policies are routinely upheld. *See Bethel*, 988 F.3d at 940 (citing *Bell*, 441 U.S. at 550) (holding that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of inmates); *Ward v. Washtenaw Cnty. Sheriff's Dep't*, 881 F.2d 325, 329–30 (6th Cir. 1989) (extending *Bell* to a "publisher only" policy for soft cover materials); *see also Miles v. Scanlon*, No. 1:21-CV-74, 2021 WL 1809834, at *6

---

[3] Ohio Administrative Code Section 5120-9-19(B)(2) provides in relevant part that "[p]rinted materials may be received in reasonable quantities; but only, directly from a publisher or distributor." Ohio Admin. Code 5120-9-19(B)(2).

[4] To the extent Plaintiffs allege that Defendant Wright "selectively enforced" the policy at issue, such allegation is conclusory, and ignores Plaintiffs' own affirmative allegation that the policy was correctly enforced as to *Race Life*. The Undersigned therefore rejects Plaintiffs' argument that the policy resulted in "the arbitrary rejection" of *Race Life*. (ECF No. 48 at PAGEID # 575.)

(W.D. Mich. May 6, 2021) ("The Sixth Circuit has repeatedly upheld the validity of the publisher-only rule.") (citing *Ward*, 881 F.2d at 325; *Littlejohn v. Larson*, No. 89-1392, 1989 WL 147110 (6th Cir. Dec. 6, 1989); *Jourdan v. Lecureux*, No. 91-1197, 1991 WL 158680 (6th Cir. Aug. 14, 1991); *Ballard v. City of Inkster*, No. 92-1203, 1992 WL 301278 (6th Cir. Oct. 21, 1992); *Hunt v. Beckenger*, No. 97-3237, 1997 WL 778158 (6th Cir. Dec. 9, 1997); *Thompson v. Campbell*, 81 F. App'x 563 (6th Cir. 2003); *Bethel*, 988 F.3d at 938–42). Indeed, the precedent is so overwhelming that in *Thompson*, the Sixth Circuit held that courts "need not engage in a *Turner* analysis of [a 'publisher only'] policy because precedent . . . binds us, in addressing this First Amendment challenge," and "[n]othing about the ['publisher only'] policy or [Plaintiff's] challenge to it overcomes these controlling precedents." *Thompson*, 81 F. App'x at 569. Against this legal background, the Undersigned finds no merit to Plaintiffs' attack on the subject "publisher-only" policy which was correctly applied to Plaintiff Heid's purchase of *Race Life*.

Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** as it pertains to Plaintiffs' claims pertaining the withholding of *Race Life* from Plaintiff Heid.

## C. Ethno-Religious Discrimination Claims

A significant portion of Plaintiffs' pleadings is related to various actions by Defendants which Plaintiffs allege have burdened their practice of Christian Separatism, through "ethno-religious discrimination," under the First, Fifth, and Fourteenth Amendments, 18 U.S.C. § 241, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1997, and 42 U.S.C. §§ 2000cc, *et seq.*, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (*See* ECF No. 1-1 at PAGEID ## 46-55; ECF No. 25 at PAGEID ## 314-318.) Specifically, Plaintiffs allege that Defendants have placed a substantial burden on their practice of Christian Separatism by prohibiting Plaintiffs from using CS-related CDs; withholding correspondence and art materials which otherwise would allow Plaintiffs to disseminate CS-related messages and symbols;

11

confiscating CS-related literature and publications from Plaintiffs; and prohibiting the use of CS-related symbols.  (*See generally* ECF Nos. 1, 1-1.)  While some individual details within Plaintiffs' pleadings in this case may be fresh to the Court, the overall nature of Plaintiffs' claims is not new.  To that end, the Court already has noted in passing that "[t]his case, at its heart, is simply *Mohr* applied to another two years of grievances," as Plaintiffs "bring First Amendment and RLUIPA challenges to the same prison policies and state interests" and "Plaintiffs' secondary claims are premised on the same underlying policies and conduct as the First Amendment and RLUIPA claims."  (ECF No. 61 at PAGEID # 706.)

A review of the operative Second Amended Complaint in *Mohr* confirms this conclusion.  (*See Mohr*, ECF No. 37.)  In *Mohr*, for example, Plaintiffs also allege that ODRC officials had placed a substantial burden on their practice of religion by:  prohibiting Plaintiffs from using CS-related CDs (*id.* at PAGEID # 1158, ¶ 24 ("RCI's current custom surrounded access to CSC sermons on CDs . . . has placed a substantial burden on my religious practice"); withholding CS-related publications (*id.* at PAGEID ## 1159-1161, ¶¶ 25-35); prohibiting Plaintiffs from disseminating CS-related phrases and messages (*id.* at PAGEID ## 1162-1164, ¶¶ 36-44); and prohibiting the use of CS-related symbols (*id.* at PAGEID ## 1164-1166, ¶¶ 48-57).

Plaintiffs may not pursue their duplicative claims in both cases.  "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Tolliver v. Jeffries*, No. 2:17-CV-806, 2019 WL 1455231, at *1 (S.D. Ohio Apr. 2, 2019) (quoting *Belser v. Washington*, No. 1:16-CV-1205, 2016 WL 6275343, at *1 (W.D. Mich. Oct. 27, 2016), *aff'd sub nom. Belser v. Washington*, No. 16-2634, 2017 WL 5664908 (6th Cir. Sept. 13, 2017) (citation and internal quotation marks omitted).  "Accordingly, as part of its inherent power to administer its docket, a district court

may dismiss a suit that is duplicative of another federal court suit." *Id.* (citation and internal

quotation marks omitted). As the Sixth Circuit recently noted,

> "As between federal district courts, ... though no precise rule has evolved, the
> general principle is to avoid duplicative litigation." *Colorado River Water
> Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "**When a federal
> court is presented with such a duplicative suit**, it may exercise its discretion to
> .... proceed, as the court below apparently did, under the rule of thumb that **the
> entire action should be decided by the court in which an action was first filed**."
> *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (citing *Kerotest Mfg. Co. v. C–O–
> Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952); *W. Gulf Maritime Ass'n v. ILA
> Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)). In particular, "[a] court may
> ... in its discretion dismiss a declaratory judgment or injunctive suit if the same
> issue is pending in litigation elsewhere." *Abbott Labs. v. Gardner*, 387 U.S. 136,
> 155 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105
> (1977).

*Belser*, 2017 WL 5664908, at *1 (emphasis added).

A complaint is duplicative and subject to dismissal if the claims, parties, and available

relief do not significantly differ from an earlier-filed action. *Wizinsky v. Twp. of Leelanau*, No.

1:19-CV-191, 2019 WL 8752229, at *2 (W.D. Mich. Dec. 12, 2019), *report and

recommendation adopted sub nom. Wizinsky v. Leelanau, Twp. of*, No. 1:19-CV-191, 2020 WL

2405386 (W.D. Mich. May 12, 2020) (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223

(7th Cir. 1993)). "Duplicative, however, does not mean identical." *Jabbar v. United States

Postal Serv.*, No. 2:21-CV-805, 2021 WL 916653, at *2 (S.D. Ohio Mar. 10, 2021), *report and

recommendation adopted*, No. 2:21-CV-805, 2021 WL 1575076 (S.D. Ohio Apr. 22, 2021).

Although the two complaints may not "significantly differ" from one another—the focus is on

"the substance of the complaint." *Id.* (citing *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir.

1988) (holding that a complaint was duplicative although different defendants were named

because it "repeat[ed] the same factual allegations" asserted in the earlier case)).

Here, Plaintiffs' ethno-religious discrimination claims substantially overlap in material

ways with Plaintiffs' earlier-asserted (and still-pending) ethno-religious discrimination claims in

*Mohr*. Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** as it pertains to Plaintiffs' ethno-religious discrimination claims, which are impermissibly duplicative to those ethno-religious discrimination claims asserted by Plaintiffs in *Mohr*.[5]

## D.  Retaliation Claims

Another major theme of Plaintiffs' pleadings is that Defendants have conspired to retaliate against Plaintiffs. (*See*, *e.g.*, ECF No. 1 at PAGEID # 39, ¶ 171 ("ODRC officials from the top-down . . . have been engaged in a conspiracy to retaliate[.]").) This new claim stands apart from Plaintiffs' ethno-religious discrimination claims and warrants closer examination.

To succeed on a First Amendment retaliation claim, a plaintiff must establish the following three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Tolliver v. Noble*, No. 2:16-CV-1020, 2022 WL 138428, at *3 (S.D. Ohio Jan. 14, 2022) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Here, Plaintiffs attempt to set forth their retaliation claim as follows:

> All of Plaintiffs actions were protected under the Constitution. The Defendants committed numerous adverse actions as described heretofore. There is a causal connection between Plaintiffs protected conduct and the Defendants' adverse actions as outlined in the chronology of events described in full in Dec.-1 and Dec.-2.

---

[5] The Undersigned observes that this is not the first time Plaintiffs have attempted to litigate duplicative claims simultaneously. *Dodrill*, 2017 WL 3053995, at *3 (S.D. Ohio July 19, 2017), *report and recommendation adopted*, No. 2:17-CV-337, 2018 WL 1046607 (S.D. Ohio Feb. 26, 2018) ("The Undersigned finds that the instant action is nothing more than another attempt to litigate the proposed amended complaints for which the Court has previously denied leave to file in the ongoing litigation of *Christian Separatist I*. The Undersigned therefore finds that the instant Complaint is frivolous and otherwise fails to state a claim for which relief can be granted.").

(ECF No. 1-1 at PAGEID # 41, ¶ 175.)  The Undersigned normally would be hesitant to endorse such nakedly conclusory allegations.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ("[C]onclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations, 'do not suffice.'") (quoting *Twombly*, 127 S.Ct. at 1949-1950).  However, construing Plaintiffs' pro se pleadings liberally, in these circumstances the Undersigned finds it appropriate to go beyond these conclusory allegations to review whether Plaintiffs have stated a retaliation claim.  The Undersigned will therefore review each element of Plaintiffs' retaliation claim in turn.

First, although the "Retaliation" sections of Plaintiffs' Complaint do not clearly articulate what protected conduct allegedly triggered Defendants' adverse actions, Plaintiffs argue in their Opposition brief that they "were engaged in a civil suit against ODRC employees [in the *Mohr* case]. . . which is what prompted the adverse actions."  (ECF No. 48 at PAGEID # 596.) Construing Plaintiffs' pleadings liberally, the Undersigned accepts Plaintiffs' argument and finds that the remainder of Plaintiffs' allegations provide ample support to conclude that the Constitutionally-protected conduct at issue was Plaintiffs' involvement in the *Mohr* case.  To this end, Plaintiffs' Complaint includes the following allegations to base their retaliation claim on Plaintiffs' involvement in prior litigation:

- Defendants' actions were "part of a retaliatory measure **over Plaintiffs' legal endeavors**" (ECF No. 1 at PAGEID # 24, ¶ 100) (emphasis added);

- Defendants' actions were a "**targeted objective to penalize [Plaintiff] Damron for** religious activities and **access to [the] court** regarding the same" (ECF No. 1 at PAGEID # 26, ¶ 111) (emphasis added);

15

- Defendants' actions were "done **because of Plaintiffs' current litigation efforts**" (ECF No. 1-1 at PAGEID # 31, ¶ 130) (emphasis added);

- Defendants "were carrying out objectives of the conspiracy and knew these objectives were made in **retaliation . . . due to [Plaintiffs'] pursuit of legal remedies**" (ECF No. 1-1 at PAGEID # 33, ¶ 140) (emphasis added);

- Defendants' latest actions "to ban the CSC **was not made until after Plaintiffs initiated legal remedies**" (ECF No. 1-1 at PAGEID # 34, ¶ 147) (emphasis added);

- Defendants' actions were "**[d]ue to Plaintiffs' legal actions** regarding religious practices . . . ."  and "Defendants are using ODRC policies and their knowledge of the law to conceal and/or justify their **retaliation against Plaintiffs for utilizing the court system**" (ECF No. 1-1 at PAGEID # 35, ¶ 150) (emphasis added);

- "[Defendants'] actions **were taken to chill Plaintiffs' legal pursuits**" (ECF No. 1-1 at PAGEID # 35, ¶ 151) (emphasis added);

- Defendants "conspired to **retaliate against Plaintiffs for accessing the courts** over deprivations of religious exercises" (ECF No. 1-1 at PAGEID # 42, ¶ 181) (emphasis added); and

- "It was common knowledge among SCI officials that this conspiracy **was over Plaintiffs' litigation**" and Defendants understood that they should act "as a means **to intimidate [Plaintiff Heid] in legal pursuits**" (ECF No. 1-1 at PAGEID # 44, ¶ 186) (emphasis added).

Thus, a review of Plaintiffs' Complaint as a whole reflects that Plaintiffs were engaged in constitutionally protected conduct based on their prior litigation.  *Manning v. Bolden*, 25 F. App'x

269, 272 (6th Cir. 2001) ("a review of the complaint clearly reflects that [Plaintiff] was engaged in constitutionally protected conduct based on his involvement in the prior lawsuits[.]") (quoting *Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)); *see also Thaddeus-X*, 175 F.3d at 391 ("That inmates have a well-established constitutional right to access the courts, based in part on the First Amendment, is clear.").

As to the second element of their retaliation claim, Plaintiffs list the following eighteen (18) allegations to show that Defendants have taken "numerous adverse actions" against them:

> (1) confiscated Heid's religious CDs . . . (2) engaged in a campaign of harassment . . . (3) placed Heid in the hole for filing a grievance . . . (4) stole Heid's art materials . . . (5) barred Heid's access to the grievance procedure for complaining about staff mistreatment . . . (6) robbed Plaintiffs of personal property . . . (7) forced Damron to mail Bibles home . . . (8) devised conduct reports to punish Plaintiffs in retaliation for accessing courts . . . (9) profiled Plaintiffs as "Active" STG . . . (10) raised Plaintiffs' security levels . . . (11) transferred Heid to a more dangerous prison . . . while transferring Damron (not once but twice) to a more distant prison from his relatives . . . (12) targeted the entire CS community within ODRC for shakedowns and punishments . . . (13) after seeking relief through the courts, Defendants are now considering previously approved CSCS symbols as STG symbols . . . (14) withheld legal materials so as to frustrate access to courts . . . (15) retaliated against Heid for filing grievance no. SCI-12-18-000036 . . . (16) issued Heid a death threat . . . (17) since Plaintiffs have initiated legal actions, Defendants have now placed a total ban on the practice of Christian Separatism and are holding it as an STG, "unauthorized group" . . . and (18) confiscated Heid's drawing of Adolf Hitler without issuing any withholding or contraband forms[.]"

(ECF No. 1-1 at PAGEID ## 40-41, ¶ 174.)[6]

---

[6] As discussed above, the Undersigned construes Plaintiffs' Complaint to allege that each of these actions was taken in response to Plaintiffs' litigation in *Mohr*. The Undersigned also recognizes, however, that Plaintiffs expressly allege that some of the above actions were *also* taken in response to Plaintiffs' utilization of the prison grievance system, which also is constitutionally-protected conduct. *Manning*, 25 F. App'x at 272 ("[A] review of the complaint clearly reflects that [Plaintiff] was engaged in constitutionally protected conduct . . . based on his decision to utilize the prison grievance system.") (citing *Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001)). Accordingly, the Undersigned's analysis does not change for these claims.

To determine whether these actions constitute adverse actions for purposes of Plaintiffs'

retaliation claim, the Court must consider whether they "would 'deter a person of ordinary

firmness' from the exercise of the right at stake.'" *Wood v. Eubanks*, No. 20-3599, 2022 WL

369350, at *9 (6th Cir. Feb. 8, 2022) (quoting *Thaddeus-X*, 175 F.3d at 396). The inquiry is an

objective one, and it "does not depend on how the particular plaintiff[s] reacted." *Bell v.*

*Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citations omitted). The Sixth Circuit recently

provided guidance for how courts should approach this analysis:

> We have "emphasize[d] that while certain threats or deprivations are so de
> minimis that they do not rise to the level of being constitutional violations, this
> threshold is intended to weed out only inconsequential actions**, and is not a
> means whereby solely egregious retaliatory acts are allowed to proceed past
> summary judgment." *Thaddeus-X*, 175 F.3d at 398. While "[m]ere threats ... are
> generally not sufficient to satisfy the adverse action requirement," *Mitchell v.
> Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004), **acts that are more than a
> "petty slight[ ] or minor annoyance[ ]" suffice**, *Burlington N. & Santa Fe Ry. Co.
> v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). *See Benison v.
> Ross*, 765 F.3d 649, 660 (6th Cir. 2014) (withholding an educational transcript);
> *Paeth v. Worth Twp.*, 483 F. App'x 956, 963 (6th Cir. 2012) (issuing a stop work
> order); *Campbell v. Mack*, 777 F. App'x 122, 135 (6th Cir. 2019) (over-tightening a
> detainee's handcuffs); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62,
> 75 n.8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (noting that the First Amendment
> "already protects state employees ... from even an act of retaliation as trivial as
> failing to hold a birthday party for a public employee ... when intended to punish
> her for exercising her free speech rights" (internal quotation marks and citation
> omitted)).

*Wood*, 2022 WL 369350, at *9. (emphasis added). Against this background, the Undersigned

finds that the eighteen actions set forth by Plaintiffs – not only when viewed individually but

also, particularly, when viewed in the aggregate – rise above the nature of "petty slight[s] or

minor annoyance[s]" to satisfy Plaintiffs' burden at this stage of the litigation for purposes of

pleading a claim.

Finally, with regard to the third element of Plaintiffs' retaliation claim, the Undersigned

does not hesitate in concluding that Plaintiffs' allegations are facially sufficient to establish a

causal connection between the protected conduct and the adverse actions. To that end, the Sixth Circuit has held that "[a] plaintiff can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendants could reasonably be inferred." *Manning*, 25 F. App'x at 272 (6th Cir. 2001) (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). That appears to be exactly what Plaintiffs have accomplished here, as they have alleged an extensive chronology of events to establish that Defendants' actions were in response to Plaintiffs' litigation in *Mohr*.

While the Undersigned will not make any comment on the ultimate merits of Plaintiffs' claims, the Undersigned concludes that Plaintiffs have set forth a *prima facie* claim of retaliation sufficient to survive the subject Motion to Dismiss. Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **DENIED** as it pertains to Plaintiffs' retaliation claim.

**E.     Conspiracy Claims**

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)). A plaintiff is required to demonstrate "a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks*, 771 F.2d at 943-44. Courts traditionally view allegations of conspiracy against public officials with "suspicion and disfavor." *Fisher v. City of Detroit*, 4 F.3d 993 (6th Cir. 1993). Thus, "[c]laims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citation omitted); *see also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("[P]leading requirements governing civil conspiracies are relatively strict." (citation omitted)).

19

It is under these relatively strict pleading requirements that Plaintiffs' allegations fall short, for despite including over 350 paragraphs of allegations, Plaintiffs critically fail to allege with any specificity the purpose or nature of Defendants' alleged conspiracy. As a preliminary matter, for example, the Undersigned notes that at various moments throughout their pleadings, Plaintiffs allege that the subject conspiracy was "orchestrated" by at least five different groups of people, and took at least five different forms:

- ECF No. 1 at PAGEID # 19, ¶ 79: Alleging a conspiracy "orchestrated by [Defendant] Windom to suppress [Plaintiff] Heid's religious rights";

- ECF No. 1 at PAGEID # 20, ¶ 85: Alleging a conspiracy by Defendants Chambers-Smith, unidentified lawyers, Niceswanger, and Gillum "to retaliate by interfering with Plaintiffs' religious exercise";

- ECF No. 1 at PAGEID # 26, ¶¶ 111-112: Alleging a conspiracy by Defendants Detty, Smith, and Morgan "to oppress Damron's religious freedoms";

- ECF No. 1-1 at PAGEID # 30, ¶ 127: Alleging a conspiracy by Defendants Shanklin and Shively to "threaten[] [Plaintiff Heid] with further punishments if he was to create any drawings of Aryan ethos or attempt to be 'propagating CS beliefs'"; and

- ECF No. 1-1 at PAGEID # 42, ¶ 179: Alleging a conspiracy by Defendants Miller and Hunyadi "to interfere with [Plaintiff] Heid's First Amendment right to file grievances."

Even taking all of these allegations as true, Plaintiffs have only arguably alleged overt acts which were committed in furtherance of a greater conspiratorial objective. But this is not enough, as Plaintiffs fail to establish what that conspiracy was in the first place. To this end, Plaintiffs'

voluminous pleadings provide no explanation for how these multiple, seemingly unrelated conspiracy theories are actually related to a single plan or conspiratorial objective. And beyond that, Plaintiffs provide no plausible basis for the Undersigned to find, no matter how liberally the pleadings are construed, that nearly three dozen prison officials (representing no fewer than *five* different prisons[7] as well as various members of the ODRC administration) and two unidentified lawyers "shared in the general conspiratorial objective," whatever that objective may be. Even taking Plaintiffs' allegations as true, the Undersigned simply cannot conclude that Defendants' acts are sufficiently intertwined so as to suggest an agreement or mutual understanding, express or tacit, between them.

In their Opposition brief, Plaintiffs argue that "the Complaint is filled with alleged facts, when accepted as true, that provides direct evidence of a conspiracy," but Plaintiffs only cite a handful of allegations in support. (ECF No. 48 at PAGEID ## 598-599 (citing ECF No. 1 at PAGEID ## 41-45, ¶¶ 177-179, 181-189, 191; ECF No. 25 at PAGEID # 318, ¶ 148).) Upon closer review of these allegations, however, the Undersigned finds Plaintiffs' allegations to be nothing more than legal conclusions masquerading as factual allegations. The Undersigned finds no allegations that could answer the above questions and establish an actionable conspiracy. Plaintiffs' allegations are therefore insufficient. *Farhat*, 370 F.3d at 599; *see also Cochrun v. Arsh*, No. 2:13-CV-00538, 2014 WL 3845810, at *5 (S.D. Ohio Aug. 5, 2014) ("Legal conclusions cloaked as factual allegations . . . are insufficient to sustain a conspiracy claim under § 1983."); *Hartsfield v. Mayer*, 76 F.3d 378 (6th Cir. 1996) ("[V]ague allegations of a wide-

---

[7] Plaintiffs name thirty-three (33) Defendants in their Civil Rights Conspiracy claim (Count XV), including employees from the following institutions: Lebanon Correctional Institute; Ross Correctional Institute; Southeastern Correctional Institute; Trumbull Correctional Institute; Warren Correctional Institute. (ECF No. 1-2 at PAGEID # 53, ¶ 209 (Count XV); *see also* ECF No. 1 at PAGEID ## 2-13, ¶¶ 5-45.)

ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim[.”])

(citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir. 1992); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990); *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir. 1987)).  Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** as it pertains to Plaintiffs' conspiracy claims.

## F.    Equal Protection Claims

Plaintiffs also submit claims under the Equal Protection Clause, but their allegations do not sufficiently allege an equal protection violation.  "The Equal Protection Clause safeguards against the disparate treatment of similarly situated individuals as a result of government action that 'either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).  To prevail on their class-of-one theory, Plaintiffs must overcome a "heavy burden" and demonstrate that they were treated differently than those similarly situated "in all material respects."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (internal quotations and citations omitted).

Here, Plaintiffs' equal protection claim fails because they fail to identify with any clarity the similarly situated groups who Plaintiffs allege were treated differently than them.  First, Plaintiffs allege that they are similarly situated to "religious groups of Judaism; Black Hebrew Israelites; [the] Nation of Islam; the Moorish Science Temple of America; and Rastafarians," but Plaintiffs later allege that they are similarly situated to "religious groups of Hinduism, Judaism, Black Hebrew Israelites, Judeo-Christianity,[8] and Rastafarians."  (*Compare* ECF No. 1-1 at

---

[8] Plaintiffs define "Judeo-Christianity" as "all forms of Christianity that believe Jesus is a Jew and Jews are God's chosen people, i.e., Catholics, Protestants, Jehovah's Witnesses, Mormons and so forth."  (ECF No. 1-1 at PAGEID # 32, ¶ 135.)

PAGEID # 34, ¶ 145, *with id.* at PAGEID # 50, ¶ 202.) Then, in the Supplemental Complaint, Plaintiffs first allege that they are similarly situated to "similarly situated religious groups of Hinduism, Judaism, Judeo-Christianity, Black Hebrew Israelites, [the] Nation of Islam, the Moorish Science Temple of America, and Rastafarianism" only to later allege that they are similarly situated to "religious groups of Hinduism, Judaism, Black Hebrew Israelites, Judeo-Christianity, and Rastafarianism who are permitted the use of [] their religious symbols without fear of punishment." (*Compare* ECF No. 25 at PAGEID # 314, ¶ 137, *with id.* at PAGEID # 316, ¶ 143.)

Even assuming, *arguendo*, that Plaintiffs had consistently defined the religious groups to which they believe they are similarly situated, they nevertheless have still failed to articulate how they could be considered similarly situated to those groups in all material respects. As this Court already has held in dismissing Plaintiff Heid's similar equal protection claim in related litigation:

> Plaintiff's equal protection claim fails because he has failed to identify any specific similarly situated person or group who was treated differently than him. *See Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Although Plaintiff asserts in his Objections that other religious groups (such as Rastafarians, Black Hebrew Israelites, the Nation of Islam, and the Moorish Science Temple of America) were afforded congregate worship services when he was not (3, ECF No. 12), these groups do not hold the supremacy of a particular race as a fundamental tenet. These groups are therefore not similarly situated to the CSC in the relevant respects.

*Heid v. Marbley*, No. 2:20-CV-1512, 2020 WL 3887800, at *3 (S.D. Ohio July 10, 2020), *appeal dismissed*, No. 20-3812, 2021 WL 4128957 (6th Cir. Apr. 23, 2021), *cert. denied*, 142 S. Ct. 468 (2021). The same analysis applies here. Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** as it pertains to Plaintiffs' claims under the Equal Protection Clause.

G.     **Access to Court Claims**

Plaintiffs also allege that they have been "denied access to legal materials"; that

Defendants' 5-page limitation for correspondence inhibits their ability to communicate about this

litigation; and that they are being denied "reasonable access to make legal copies."  (ECF No. 1-

1 at PAGEID ## 34-39, ¶¶ 150-171.)  Plaintiffs again fail to state a claim upon which relief can

be granted.

To state an access to courts claim, "an inmate cannot establish relevant actual injury

simply by establishing that his prison's law library or legal assistance program is subpar in some

theoretical sense . . . .  [T]he inmate [] must go one step further and demonstrate that the alleged

shortcomings in the library or legal assistance program hindered his efforts to pursue a legal

claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To meet this burden, a Plaintiff "might show,

for example, that a complaint he prepared was dismissed for failure to satisfy some technical

requirement which, because of deficiencies in the prison's legal assistance facilities, he could not

have known. Or that he had suffered arguably actionable harm that he wished to bring before the

courts, but was so stymied by inadequacies of the law library that he was unable even to file a

complaint." *Id.*

Here, even taking their allegations as true, Plaintiffs have failed to make the requisite

showing.  For example, as to their claims that they have been "denied access to legal materials,"

Plaintiffs allege that Defendants' actions merely "impeded" their access – not that they ever

failed to obtain access to any desired legal material.  (ECF No. 1-1 at PAGEID # 35, ¶ 153.)

Similarly, regarding their allegation that Defendants confiscated property to interfere with

Plaintiffs' legal correspondence, Plaintiffs affirmatively concede that Defendants' actions only

"effectively slowed" their legal communications – not that Defendants prevented them from

communicating.  (*Id.* at PAGEID # 36, ¶ 154.)  Plaintiffs' allegations regarding Defendants' five-

page correspondence policy suffers the same defect, as Plaintiffs fail to allege that the policy has impeded or prevented them from corresponding in any way.  (*Id.* at PAGEID ## 36-37, ¶¶ 156-160.)[9]  Finally, Plaintiffs also affirmatively allege that not having additional access to copy machines only "frustrates and/or impedes" their access to the Court.  (*Id.* at PAGEID # 38, ¶ 167.)  Critically, Plaintiffs have not alleged that their efforts to litigate have been prejudiced in any material way; nor have they alleged that prison resources have prevented them from filing anything or caused them to miss any Court deadline which prejudiced their claims – an incredible accomplishment given the hundreds of filings across Plaintiffs' six cases.  *See Lewis*, 518 U.S. at 351.  All of Plaintiffs' allegations are insufficient as a matter of law.

Accordingly, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** as it pertains to Plaintiffs' access to courts claims.

## H.    Supervisory Claims

Finally, Defendants appear to take issue with the nature of Plaintiffs' allegations. Specifically, Defendants submit that by alleging "the collective acts of multiple defendants," Plaintiffs have failed to state plausible constitutional violations, and that "the complaint does no more than use catch phrases or blanketly assign liability based on a Defendant's supposed supervisory capabilities."  (ECF No. 39 at PAGEID ## 476-477.)  Defendants submit that such allegations "remains non-compliant with the pleading requirements of § 1983" and conclude that "[s]ince the complaint does no more than attempt to generally ascribe the collective acts of

---

[9] The Undersigned additionally takes note that this lawsuit marks Plaintiffs' second effort to use this Court to seek an exemption from Defendants' five-page correspondence policy – and the Court previously denied Plaintiffs' prior effort.  *See Mohr*, ECF No. 146 at 2 (denying Plaintiffs' request for an exemption from the mail policy, noting that prison administrators "'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (quoting *Bell*, 441 U.S. at 547).

multiple Defendants to individuals, the complaint fails to state a plausible constitutional violation against any Defendant and, therefore, must be dismissed." (*Id.* at PAGEID ## 477-478.)

Defendants' arguments are not well taken. Notwithstanding the above analysis regarding Plaintiffs' ability to state claims upon which relief can be granted, the Undersigned agrees with Plaintiffs that their 350+ paragraphs of allegations sufficiently identify alleged acts by each individual Defendant. The Undersigned does not interpret Plaintiffs' claims as arising under a theory of *respondeat superior*, and to the extent Defendants believe that Plaintiffs have failed to meet their pleading burden with regard to any individual Defendants or any specific claims, they have failed to set forth any persuasive argument to those ends for purposes of the subject Motion.

## IV. CONCLUSION

For the reasons stated above, the Undersigned **RECOMMENDS** that the Properly Served and Named Defendants' Motion to Dismiss Plaintiffs' Complaints (ECF Nos. 1, 25), ECF No. 39, be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Undersigned **RECOMMENDS** that the Court **GRANT** the Motion to Dismiss as to the following claims:

- Plaintiffs' claims pertaining the withholding of *Race Life* from Plaintiff Heid;

- Plaintiffs' ethno-religious discrimination claims;

- Plaintiffs' conspiracy claims;

- Plaintiffs' Equal Protection claims; and

- Plaintiffs' access to courts claims.

The Undersigned **FURTHER RECOMMENDS** that the Court **DENY** the Motion to Dismiss as to the following claims:

- Plaintiff Damron's claims against Defendants Aderholt; Bratton; Caradine; Crawford; Emrick; Jennings; Jane/John Does, PSC; and Lambert, pertaining the withholding of *Rise of the Aryans* and "Werewolfe of the Reich" from Plaintiff Damron; and

- Plaintiffs' retaliation claims against Defendants Aderholt; Ash; Chambers-Smith; Cook; Jane/John Doe Lawyers; Lt. John Doe; Detty; Donaldson; Figgins; Friend; Gillum; Good; Graves; Hill; Huffman; Hunyadi; Letts; Miller; Morgan; Niceswanger; Roberts; Rose; Shanklin; Smith; Shuvallus; Ward; Wiggins; Windom; and Wright.

To be clear, although the Undersigned recommends that the above claims should survive dismissal at this stage of the litigation, the Undersigned does not make any comment on the ultimate merits of those claims. Likewise, the Undersigned's recommendation that Plaintiffs' ethno-religious discrimination claims be dismissed from this case is not intended to suggest any opinion regarding the ultimate merits of Plaintiffs' pending ethno-religious discrimination claims in *Mohr*.

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: February 16, 2022**                         */s/ Elizabeth A. Preston Deavers*
                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                  **UNITED STATES MAGISTRATE JUDGE**