**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAY SCOTT HEID**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:20-cv-0901** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **LT. TODD ADERHOLT**, *et al.*, | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court for consideration of the Magistrate Judge's Report and Recommendation (ECF No. 62) on Defendants' Motion to Dismiss (ECF No. 39), together with Plaintiffs' Objections thereto (ECF No. 72). Also pending is Plaintiffs' Motion for a Preliminary Injunction (ECF No. 52). For the reasons that follow, Plaintiffs' Objections are **SUSTAINED IN PART** and **OVERRULED IN PART**, the Report and Recommendation is **ADOPTED AS MODIFIED**, and Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

## I. BACKGROUND

Plaintiffs Ray Scott Heid and James E. Damron, who are incarcerated at the Lebanon Correctional Institution and the Noble Correctional Institution, respectively,[1] are frequent *pro se* litigants before this Court. They have brought multiple actions alleging infringement of First Amendment rights—specifically, religious liberties and communication privileges—by prison officials. In addition to this case, others are: *Damron v. Jackson*, Case No. 2:09-cv-0050

---

[1] Plaintiff Damron previously was incarcerated at the Trumbull Correctional Institution. He informed the Court on February 28, 2022, of his transfer. (ECF No. 64).

1

("*Jackson*"); *The Christian Separatist Church Soc'y of Ohio, the Wife of Christ, Prosopopoeia v. Ohio Dep't of Rehab. & Corrs.*, Case No. 2:15-cv-2757 ("*Christian Separatist I*"); *Damron v. Dodrill*, Case No. 2:17-cv-0337 ("*Dodrill*"); and *Heid v. Mohr*, Case No. 2:18-cv-0311 ("*Mohr*"). Further cases include *Heid v. Hooks*, Case No. 2:17-cv-0650 ("*Hooks*"), alleging race discrimination and cruel and unusual punishment by prison officials; and *Heid v. Marbley*, Case No. 2:20-cv-1512 ("*Marbley*"), alleging conspiracy by the presiding judicial officers.

Plaintiffs adhere to the Christian Separatist faith—which this Court previously has described as "a militantly Christian, White Nationalist organization composed only of white Christian men and women who hold the view that true white Nationalism and Christianity are one in the same philosophy." *Christian Separatist I*, ECF No. 110 at 1–2 (internal quotation marks omitted). Plaintiffs' many cases stem from allegedly unconstitutional restrictions on their Christian Separatist practice, imposed by the Ohio Department of Rehabilitation and Corrections ("ODRC"). The present case is no exception; it alleges various civil rights deprivations related to, *inter alia*, Defendants' confiscation of certain Christian Separatist literature, prohibition of Christian Separatist symbols, and interference with religious correspondence. (ECF No. 1).

Plaintiffs filed this case on February 9, 2020, against 41 named and unnamed Defendants, stating 18 causes of action. (*Id.*). A Supplemental Complaint was filed on February 4, 2021, with 6 new named Defendants and another 13 causes of action. (ECF No. 25). The properly named and served Defendants (hereinafter, simply "Defendants") moved to dismiss the case for failure to state a claim. (ECF No. 39). On February 16, 2022, the Magistrate Judge issued a Report and Recommendation that the Motion be granted in part and denied in part. (ECF No. 62). Plaintiffs filed timely Objections (ECF No. 72), and Defendants filed a response (ECF No. 77).

Also pending before the Court is Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 52). The Court already denied Plaintiffs' Motion as to the Temporary Restraining Order, finding neither immediacy nor irreparability of harm. (ECF No. 56). At Plaintiffs' request, the Court held the preliminary injunction decision in abeyance pending resolution of their Motion to Appoint Counsel (ECF No. 51), which the Court later denied for want of sufficiently meritorious claims. (ECF No. 61). The Motion for a Preliminary Injunction now has been briefed fully (ECF Nos. 63 & 78) and is ripe for adjudication.

## II. MOTION TO DISMISS

### A. Legal Standard

Upon objection to a Magistrate Judge's Report and Recommendation, the District Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* !!

Objections must "address specific concerns" with the Report and Recommendation, so as to "'focus attention on those issues . . . that are at the heart of the parties' dispute.'" *Howard. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). "[A]n objection preserves an issue when it explains and cites specific portions of the report which [the party] deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations incorporated, internal quotation marks omitted). General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the magistrate [judge]'s report has the same effects as would a failure to object." *Howard*, 932 F.2d at

509. Nevertheless, the objections of a petitioner appearing *pro se* are construed liberally and held to less stringent standards than documents drafted by lawyers. *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When evaluating such a motion, "[a]ll factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). But the court "need not . . . accept unwarranted factual inferences." *Id.* Complaints must state "more than a bare assertion of legal conclusions to survive a motion to dismiss." *Horn v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*, 2013 WL 693119, at *1 (S.D. Ohio Feb. 26, 2013) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim to relief must be "'plausible on its face,'" with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Nevertheless, "basic pleading essentials" still are required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Among such essentials is the obligation under Federal Rule of Civil Procedure 8(a) to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

## B. Analysis

The Magistrate Judge recommended Defendants' Motion to Dismiss be granted in part and denied in part. Dismissal was recommended for the following claims:

- Plaintiffs' claims pertaining to the withholding of *Race Life* from Plaintiff Heid;

- Plaintiffs' ethno-religious discrimination claims;

- Plaintiffs' conspiracy claims;

- Plaintiffs' Equal Protection claims; and

- Plaintiffs' access to courts claims.

(ECF No. 62 at 26). The remaining claims were recommended to remain in the case:

- Plaintiff Damron's claims against Defendants Aderholt; Bratton; Caradine; Crawford; Emrick; Jennings; Jane/John Does, PSC; and Lambert, pertaining to the withholding of *Rise of the Aryans* and "Werewolfe of the Reich" from Plaintiff Damron; and

- Plaintiffs' retaliation claims against Defendants Aderholt; Ash; Chambers-Smith; Cook; Jane/John Doe Lawyers; Lt. John Doe; Detty; Donaldson; Figgins; Friend; Gillum; Good; Graves; Hill; Huffman; Hunyadi; Letts; Miller; Morgan; Niceswanger; Roberts; Rose; Shanklin; Smith; Shuvallus; Ward; Wiggins; Windom; and Wright.

(*Id.* at 27).

For several sections of the Report and Recommendation, no objections were filed. Plaintiffs' Objections did not address the Magistrate Judge's treatment of their threshold waiver argument, nor the recommended dismissal of claims pertaining to the withholding of *Race Life*

from Plaintiff Heid. (ECF No. 62 at 5–6, 9–11). Defendants filed no objections, and thus waived opposition to those portions of the Report and Recommendation that rejected their arguments for dismissal. (*Id.* at 8–9, 14–19, 25–26). As such, these sections of the Report and Recommendation are **ADOPTED**. The Court now turns to Plaintiffs' Objections.

### 1. *Ethno-Religious Discrimination*

First, Plaintiffs object to the recommended dismissal of their "ethno-religious discrimination" claims. This term is a catch-all for Plaintiffs' allegations "that Defendants have placed a substantial burden on their practice of Christian Separatism," which Plaintiffs pursue under the First, Fifth, and Fourteenth Amendments; 18 U.S.C. § 241; 42 U.S.C. §§ 1981, 1983, and 1987; and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (ECF No. 62 at 11). Underlying these theories are complaints about Defendants' policies "prohibiting Plaintiffs from using CS-related CDs; withholding correspondence and art materials which otherwise would allow Plaintiffs to disseminate CS-related messages and symbols; confiscating CS-related literature and publications from Plaintiffs; and prohibiting the use of CS-related symbols." (*Id.* at 11–12). The Magistrate Judge found these claims to be impermissibly duplicative of Plaintiffs' live claims in *Mohr* and recommended dismissal on that basis. (*Id.* at 12–14).

The duplicative litigation doctrine reasons that "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants.'" *Belser v. Washington*, 2016 WL 6275343, at *1 (W.D. Mich. Oct. 27, 2016), *aff'd*, 2017 WL 5664908 (6th Cir. Sept. 13, 2017) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)). "Courts focus on the substance of the complaint," and deem a second action "duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action." *Cummings v. Mason*, 2011 WL 2745937, at *2

6

(W.D. Mich. July 13, 2011) (citing *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988); and *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). Plaintiffs are familiar with this doctrine, as it was the basis for screening their claims in *Dodrill*. *See Dodrill*, ECF No. 16 at 6, 8 (dismissing claims as frivolous and duplicative where "Plaintiffs [had] not asserted any new material facts" compared to *Jackson* and *Christian Separatist I* and were attempting merely to relitigate "the proposed amended complaints, which the Court denied leave to file in *Christian Separatist I*").

In their Objections, Plaintiffs note some limitations on this doctrine, citing *Waad v. Farmers Insurance Exchange*, 762 F. App'x 256 (6th Cir. 2019), and other Sixth Circuit cases. (ECF No. 72 ¶¶ 4–9). *Waad* recognizes a "caveat" in the duplicative litigation doctrine: it does "'not apply to claims that were not ripe at the time of the first suit.'" 762 F. App'x at 260 (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006)). Here, Plaintiffs note, "the facts underlying this lawsuit did not happen until after Plaintiffs had already filed Mohr." (ECF No. 72 ¶ 10). They then detail the various confiscations and prohibitions at issue in this case, each occurring after the file date of *Mohr*. (*Id.* ¶ 12a–k). Defendants' Response correctly identifies the similarities between the acts here and in *Mohr*, but summarily concludes (without distinguishing *Waad* and *Rawe*) that "any difference in titles or timing becomes irrelevant." (ECF No. 77 at 1).

Plaintiff's Objection is well taken (save for their perennial cry of "fraud upon the Court where the magistrate suppresses the truth in litigation" (ECF No. 72 ¶ 14)). In a line quoted by the Report and Recommendation, this Court commented before that the instant case "at its heart, is simply *Mohr* applied to another two years of grievances," as it challenges "the same prison policies and state interests" under common legal theories. (ECF No. 61 at 6, quoted by ECF No. 62 at 12). In the Court's view, these similarities speak to Plaintiffs' likelihood of success in this matter, rather

than their ability to maintain it as a standalone action. The outcome of *Mohr*, which now is at the summary judgment stage, will resolve whether Defendants' policies impose a substantial burden on religious practice; and, if so, whether they further a compelling state interest by the least restrictive means. At this time, the Court deems it prudent for both cases to remain—with the understanding that, once those rulings are made in *Mohr*, Plaintiffs' "ethno-religious discrimination" claims here will be governed by the same analysis.[2]

Dismissal would be premature, however, since the operative facts had not yet occurred when *Mohr* was filed. *See Waad*, 762 F. App'x at 260. Unlike *Dodrill*, Plaintiffs have brought new material facts in this case which were not presented to the Court in prior litigation. Therefore, Plaintiffs' Objections are **SUSTAINED** as to this section. The Report and Recommendation will be **MODIFIED** such that the "ethno-religious discrimination" claims are permitted to remain, for the reasons stated herein.[3]

### 2. Conspiracy

Plaintiffs also object to the Magistrate Judge's treatment of their conspiracy claims. The Magistrate Judge recommended dismissal, noting the lack of "specificity" regarding "the purpose or nature of Defendants' alleged conspiracy." (ECF No. 62 at 20). "[A]t various moments throughout their pleadings, Plaintiffs allege that the subject conspiracy was 'orchestrated' by at least five different groups of people, and took at least five different forms." (*Id.*). "And beyond

---

[2] Defendants made other arguments in favor of dismissal, which the Report and Recommendation did not have occasion to consider. The Court will not dismiss on those grounds either, as they raise questions that are more appropriately answered in *Mohr* with the benefit of evidence adduced through discovery and presented on summary judgment. As such, *Mohr* should proceed before the claims are adjudicated in this matter.

[3] Plaintiffs raise another option short of dismissal: the Court could "consolidate these cases [*Mohr* and *Aderholt*] pursuant to FRCP 42." (ECF No. 72 ¶ 17). The Court is disinclined to consolidate at this time, but it may consider that option at a later date.

that," the Magistrate Judge reasoned, "Plaintiffs provide no plausible basis for the Undersigned to find, no matter how liberally the pleadings are construed, that nearly three dozen prison officials (representing no fewer than *five* different prisons as well as various members of the ODRC administration) and two unidentified lawyers 'shared in the general conspiratorial objective,' whatever that objective may be." (*Id.* at 21 (emphasis original, footnote omitted)).

The Court concurs with the Magistrate Judge's assessment. As identified in the Report and Recommendation, "pleading requirements governing civil conspiracies are relatively strict," *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008), as "[c]ourts have traditionally viewed conspiracy suits against public officials with suspicion and disfavor." *Fisher v. City of Detroit*, 4 F.3d 993 (table), 1993 WL 344261, at *5 (6th Cir. Sept. 9, 1993). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiffs' Objections only underscore the deficiencies in their pleadings. They assert that the Magistrate Judge "misapprehends the separate conspiracies that took place against the Plaintiffs . . . enacted and carried out at different times by different ODRC officials." (ECF No. 72 ¶¶ 20, 24). If Plaintiffs intended to assert sub-conspiracies, this is hardly clear from the Objections, much less the Complaint. The allegations identified in Plaintiffs' Objections repeatedly refer to "the conspiracy," singular (*see id.* ¶ 21), in an attempt to identify "a single plan" and "general objective." (*Id.* ¶¶ 21–22).

Without some level of clarity regarding the conspiracy's purpose and nature, Plaintiffs cannot satisfy the requirement in Federal Rule of Civil Procedure 8(a) of "a short and plain statement of the claim"—much less overcome the "skepticism and disfavor" toward a conspiracy

encompassing dozens of civil servants. *Fisher*, 1993 WL 344261, at *5. Even recognizing the early stage of these proceedings and the leniency afforded to *pro se* litigants, Plaintiffs have failed to state a conspiracy claim sufficient to withstand Defendants' Motion to Dismiss.[4] As such, Plaintiffs' Objections are **OVERRULED** as to this section, and the Report and Recommendation is **ADOPTED**.

### 3. Equal Protection

Next, Plaintiffs object to the Magistrate Judge's recommended dismissal of their equal protection claims. The Magistrate Judge first identified Plaintiffs' inconsistent allegations regarding which similarly situated groups were treated differently than them. (ECF No. 62 at 22–23). Then, "assuming, *arguendo*, that Plaintiffs had consistently defined the religious groups to which they believe they are similarly situated," (*Id.* at 23), the Magistrate Judge identified a ruling in *Marbley* that rejected Plaintiffs' arguments head-on:

> Plaintiff's equal protection claim fails because he has failed to identify any specific similarly situated person or group who was treated differently than him. *See Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Although Plaintiff asserts in his Objections that other religious groups (such as Rastafarians, Black Hebrew Israelites, the Nation of Islam, and the Moorish Science Temple of America) were afforded congregate worship services when he was not (3, ECF No. 12), these groups do not hold the supremacy of a particular race as a fundamental tenet. These groups are therefore not similarly situated to the CSC in the relevant respects.

2020 WL 3887800, at *3 (S.D. Ohio July 10, 2020) (Morrison, J.).

---

[4] It bears mentioning that Plaintiffs have a habit of presenting this Court with fanciful and frivolous conspiracy allegations lacking well-pled factual support. *See, e.g.*, *Christian Separatist I*, ECF No. 4 at 8–9 (conspiracy claims under 42 U.S.C. §§ 1985 & 1986 dismissed on screening, as plaintiffs "offer[ed] nothing more than the conclusory allegation that Defendants acted in concert"), *report and recommendation adopted*, ECF No. 12; *Marbley*, 2020 WL 3887800, at *3 (S.D. Ohio July 10, 2020) (Morrison, J.) (conspiracy involving the judicial officers and attorneys in *Christian Separatist I* and *Dodrill* dismissed on screening).

The bulk of Plaintiffs' Objections restate those same arguments about other religious groups, without giving any reasons why the prior analysis would not control. (*See* ECF No. 72 ¶¶ 33–45). Plaintiffs' attempt to relitigate this issue is not well taken. Without a viable allegation of disparate treatment, Plaintiffs fail the "threshold element of an equal protection claim." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *see also Ctr. for Bio-Ethical Reform*, 648 F.3d at 379 ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." (internal quotation marks omitted)). Even Plaintiffs recognize that "disparate treatment of similarly-situated individuals" is the touchstone of an equal protection claim. (ECF No. 72 ¶ 32, citing *Paterek*, 801 F.3d at 649).

The remaining Objections (ECF No. 72 ¶¶ 46–49) discuss *Davis v. Prison Health Services*, 679 F.3d 433 (6th Cir. 2012), which does not salvage Plaintiffs' claims. *Davis*, a case involving discrimination on the basis of sexual orientation, noted that a complaint would not be required "to include allegations about similarly-situated prisoners," where it likewise alleged "direct evidence of discriminatory motive and animus." *Id.* at 439–40. Yet, *Davis* did not displace the requirement of disparate treatment; it merely noted a separate avenue by which the plaintiff might prove he was treated differently from heterosexual prisoners on account of his sexuality. Tellingly, every piece of "direct evidence" that Plaintiffs advance in their application of *Davis* is, in fact, an inapt comparison with differently situated groups. Two concern exemptions or "grandfathering" of CDs, where the ODRC policy (61-PRP-01) crafts a distinction based not on race or religion but on the security level of the prisoner and the date of original possession; and three concern the permissible uses of purportedly "separatist" symbols in contexts where they do not stand for racial supremacy,

*e.g.*, the Hindu swastika and the Jewish Star of David. (*See* ECF No. 72 ¶ 48a–e). None supports a well-pled allegation of "discriminatory motive and animus." *Davis*, 679 F.3d at 440.

As a final point, Plaintiffs attempt to invoke strict scrutiny by framing the Christian Separatist religion as "a suspect class." (ECF No. 72 ¶ 48). Plaintiffs cite no legal authority for this move. "Suspect class" typically refers to "a group of people identified by their race, alienage, or national origin." *Burnette v. Bredesen*, 566 F. Supp. 2d 738, 746 (E.D. Tenn. 2008) (citing *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)). "In determining whether a class is suspect . . . courts examine whether the class historically has been subjected to discrimination, whether members of the group 'exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group,' and whether the group is 'a minority or politically powerless.'" *Bassett v. Snyder*, 951 F. Supp. 2d 939, 959 (E.D. Mich. 2013) (quoting *Lyng v. Castillo*, 477 U.S. 635, 638 (1986)). Plaintiffs' bare assertion does not persuade the Court that Christian Separatists meet this standard.

In all, the Court concurs with the Magistrate Judge's reasoning. Plaintiffs' Objections are **OVERRULED** on their equal protection claims, and the Report and Recommendation is **ADOPTED**.

### 4.  *Access to the Court*

Last, Plaintiffs briefly object to the Magistrate Judge's recommendation to dismiss their "access to court" claims. Plaintiffs object that the Magistrate Judge overlooked their allegations "that Defendants['] actions of withholding legal mail caused Plaintiff Heid to miss the deadline of filing a Petition for a Writ of Certiorari in [*Christian Separatist I*]." (ECF No. 72 ¶ 51). Plaintiffs did not file specific objections on other allegations analyzed in this section: "that they have been 'denied access to legal materials'; that Defendants' 5-page limitation for correspondence inhibits

their ability to communicate about this litigation; and that they are being denied 'reasonable access to make legal copies.'" (ECF No. 62 at 24, quoting and citing Complaint). As such, Plaintiffs have waived *de novo* review of those issues.

Regarding the certiorari deadline in *Christian Separatist I*, Plaintiffs direct the Court to the following allegations, appearing in paragraphs 152 and 153 of the Complaint:

> Defendant Wright and John Doe, mailroom staff, withheld legal documents from Heid in violation of 75-MAL-02(VI)(C). These two Defendants then refused to process Heid's legal mail per 59-LEG-01(VI)(D)(2). Heid also notified Stanley Miller, IIS, of the need to access the courts. Miller failed to ensure this right.
>
> While in the hole, Heid was denied access to legal materials. Heid requested assistance through Lt. Ward who did little to help. Stanley Miller also failed to enforce fair and equal treatment of ODRC policies regarding the receipt and forwarding of legal mail; in violation of 5120-9-29. This caused Heid to miss the deadline for filing his Writ of Certiorari regarding [*Christian Separatist I*]. . . .

(ECF No. 1 ¶¶ 152–53 (internal citations omitted)).

The Report and Recommendation does not quote these specific allegations, but it does make a general point: "Plaintiffs have not alleged that their efforts to litigate have been prejudiced in any material way; nor have they alleged that prison resources have prevented them from filing anything or caused them to miss any Court deadline which prejudiced their claims." (ECF No. 62 at 25). Defendants raised the same point in their Motion to Dismiss, quoting *Christopher v. Harbury*: "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." (ECF No. 39 at 24, quoting 536 U.S. 403, 416 (2002)). Both propositions are correct.

Plaintiffs falter with respect to their certiorari allegations because their Complaint does not establish that Plaintiff Heid lost any remedy or was prejudiced in *Christian Separatist I*. As alleged, Plaintiff Heid was denied legal materials "for roughly 60-days." (ECF No. 1 ¶ 155). Under the

Supreme Court Rules, Plaintiffs had *90* days in which to file their petition or apply for an extension. S.Ct. R. 13; *see also* 28 U.S.C. § 2101(c). A Justice may extend the deadline for up to 60 days, *Id.*, effectively offsetting the full period of Defendants' purported interference. Neither the Complaint nor the Objections demonstrate why Plaintiffs could not file within the remaining time or at least avail themselves of the extension period. Critically, if Plaintiffs neglected to pursue available relief, then they cannot claim a "lost" remedy with resulting prejudice. Given this defect, the factual allegations fail to support Plaintiffs' conclusory claim that Defendants "caused Heid to miss the deadline for filing his Writ of Certiorari regarding [*Christian Separatist I*]." (ECF No. 1 ¶ 153).

Since no other arguments are advanced, Plaintiffs' Objections are **OVERRULED** as to the access-to-court claims, and the Magistrate Judge's Report and Recommendation is **ADOPTED**.

### C.  Summary of Dispositions

To summarize the foregoing, the Court **OVERRULES** Plaintiffs' Objections and **ADOPTS** the Magistrate Judge's recommendations in sections III.E, F, and G of the Report. The Court also **ADOPTS** the recommendations in sections III.A, B, D, and H, to which no specific objections were filed. The Court **SUSTAINS** Plaintiffs' Objections and **REJECTS** the recommendations in Section III.C. Overall, the Report and Recommendation is **ADOPTED WITH MODIFICATIONS**, insofar as Plaintiffs' "ethno-religious discrimination" claims may remain in the case.

### III.  MOTION FOR PRELIMINARY INJUNCTION

This brings the Court to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 52). Plaintiffs sought a preliminary injunction to accomplish the following:

[1] mandate that the status quo at the outset of [*Mohr*] be re-instated; and [2] that the current status quo be maintained as to the religious materials Plaintiffs currently possess; [3] that an order be made providing Plaintiff Heid with reasonable access to a copy machine; and [4] that an order be made providing Plaintiffs use of [ODRC] policy 75-MAL-02(VI)(C)(5) for reasonable communications between co-plaintiffs.

(*Id.* ¶ 5). Plaintiffs sought a temporary restraining order on the same grounds, which was denied after a videoconference held on November 1, 2021. (ECF No. 56). The Court found, for all claims, that Plaintiffs had failed to show immediate and irreparable harm. (*Id.*). It also observed that the religious claims bore striking similarities to the injunctive relief denied in *Mohr*. (*Id.* at 5).

The rulings above narrow this task substantially. Given that Plaintiffs' "access to court" claims no longer are before the Court, *see supra* Section II.B.4, the Motion is **MOOT** with respect to Plaintiffs' third and fourth requests. Plaintiffs' first two requests require further analysis.

### A. Necessity of a Hearing

As a threshold matter, the Court is resolving Plaintiffs' Motion without a preliminary injunction hearing. "Federal Rule of Civil Procedure 65, which governs the issuance of preliminary injunctions, does not explicitly require the court to conduct an evidentiary hearing before issuing an injunction . . . . [O]ur Rule 65 jurisprudence indicates that a hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (collecting authorities). The Sixth Circuit has endorsed the following approach:

[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.

*Id.* at 553 (quoting *McDonald's Corp. v. Robertson* 147 F.3d 1301, 1312–13 (11th Cir. 1998)). *See also* 11A Wright & Miller, Federal Practice and Procedure: Civil § 2949 (2d ed.) ("[P]reliminary injunctions [may be] denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless.") (quoted with approval by *Farnsworth v. Nationstar Morg., LLC*, 569 F. App'x 421, 427 (6th Cir. 2014)).

The Court did hear argument on November 1, 2021, regarding Plaintiffs' Motion for a Temporary Restraining Order; but it did not set a preliminary injunction hearing. When setting the parties' briefing schedule, the Court suggested it "might decide to resolve Plaintiffs' Motion on the papers, given that the evidence to be adduced would overlap significantly with that presented at the two-day Preliminary Injunction hearing in *Mohr*." (ECF No. 61 at 8).

Having now reviewed the briefing, the Court finds this matter appropriately is resolved on the papers. A hearing would be highly redundant with *Mohr*, where the Court heard extensive evidence regarding ODRC's restrictions on certain Christian Separatist literature and symbols. Plaintiffs' briefing centers on the burden to their religious practice and the legitimacy of the state interest, rehashing old arguments which were addressed squarely in *Mohr*. Under these circumstances, no hearing is necessary.

## B. Analysis

In determining whether a preliminary injunction is warranted, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d

580, 590–91 (6th Cir. 2012). While a strong likelihood of success is crucial, all four factors must be balanced rather than treated as prerequisites. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). Irreparable harm also is of great importance: "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis removed).

Preliminary injunctions are a discretionary remedy intended to "maintain[] the status quo pending determination of an action on its merits." *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016) (quoting *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976)). Like the temporary restraining order, "the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (internal quotation marks omitted). Any preliminary injunction must be stated in specific terms, describe in reasonable detail the act or acts to be restrained, and give the reasons for its issuance. Fed. R. Civ. P. 65(d). Furthermore, "it should be tailored to restrain no more than what is reasonably required to accomplish its ends." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978) (internal quotation marks omitted).

### 1. Threshold Defects

Plaintiffs' first request, for reinstatement of "the status quo at the outset of [*Mohr*]" (ECF No. 52 ¶ 5), is facially improper. In denying Plaintiffs a temporary restraining order, the Court wrote that "[t]heir attempt to reinstate a previous status quo is inappropriate for a TRO motion since the harm already has occurred." (ECF No. 56 at 4, citing *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015)). The same is true of a preliminary injunction. *See*

17

*Burniac*, 810 F.3d at 435 (purpose of a preliminary injunction is to "'maintain[] the status quo pending determination of an action on its merits'"). With their first request, Plaintiffs seek not to preserve the status quo, but to restore a state of affairs that ended more than four years ago. This is not an appropriate use of preliminary injunctive relief, so the Motion is **DENIED** as to the first request. The Court will analyze Plaintiffs' second request only: "that the current status quo be maintained as to the religious materials Plaintiffs currently possess." (ECF No. 52 ¶ 5).

### 2. *Likelihood of Success on the Merits*

To meet the first prong of a preliminary injunction analysis, Plaintiffs would need to show either that ODRC's policies on Christian Separatist materials likely are invalid, or that the confiscation of said materials likely was retaliatory. Plaintiffs spend most of their Motion arguing that ODRC's restrictions infringe on their religious liberty, in violation of the First Amendment and RLUIPA. (*See* ECF No. 52 ¶¶ 17–81 & 85–92).[5]

Several of Plaintiffs' assertions are factually unmoored. Two of their "prepositions [*sic*] for review" refer to a "ban of the CSC faith." (*Id.* at 2). No facts are offered to suggest that ODRC has banned Christian Separatist beliefs, as opposed to certain incendiary symbols and rhetoric. Defendants rebut the point with a Declaration from Matthew Gillum, an ODRC investigator of "security threat groups," which reads: "Although inmates may believe whatever they choose to believe, *including the precepts of Christian Separatism*, they cannot possess or display materials containing images of the swastika because in a prison environment such symbolism provokes violence." (ECF No. 63-1 ¶ 3 (emphasis added)).

---

[5] Plaintiffs briefly advance free speech claims as well, which rest on "the same reasons" as their religious exercise claim. (*Id.* ¶ 83). They also advance equal protection theories, which attempt to show disparate treatment compared to "Judaism, Judeo-Christianity, Black Hebrew Israelites, Rastafarians, Hinduism, and the NOI [Nation of Islam]." (*Id.* ¶¶ 94–95). Per the Court's disposition in Section II.B.3, *supra*, these equal protection claims are no longer before the Court, as the comparisons are inapt.

The policy described by Gillum came before this Court at the preliminary-injunction stage in *Mohr*, where the Court extensively analyzed whether ODRC could proscribe incendiary Christian Separatist literature and symbols on a rationale of prison security. Applying RLUIPA and *Cutter v. Wilkinson*, 544 U.S. 709 (2005), the Court found: (1) "that Plaintiff Heid's use of the swastika is not an integral part of his religious practice," as relevant to the "substantial burden" analysis; (2) that ODRC had a "compelling interest" in banning literature with "inflammatory rhetoric" and "call[s] to violence"; (3) that the swastika poses a risk to prison security and increases the "burden on ODRC staff to respond to prison altercations or prevent gang activity and affiliations"; and (4) that among the proposed alternatives, "the State likely would prevail in showing that the ban[s] . . . are the least restrictive means of furthering prison safety." *Mohr*, ECF No. 57 at 10–21 (quoted at 15, 16, 18, 19). "Because the state has a higher burden under RLUIPA than under the First Amendment," Plaintiffs' First Amendment challenges failed by extension. *Id.* at 9. In reaching these conclusions, the Court recounted the hearing testimony of three ODRC officials, each involved in tracking and addressing security threats in prisons, and noted the deference owed to their "experienced judgment." *Id.* at 17–18. Plaintiffs appealed the *Mohr* ruling to the Sixth Circuit, where it was upheld in full upon *de novo* review of Plaintiffs' likelihood of success on the merits. *Heid v. Mohr*, No. 19-3259, ECF No. 32-2 at 4–9 (6th Cir. Mar. 30, 2020).

Plaintiffs' other propositions for review—the "proscription of CSCS religious symbols," "confiscation of CSC religious materials," "restriction on CS Bible communications," and "restriction on CS religious CDs" (ECF No. 52 at 3)—each involve implementation of the ODRC policies discussed in *Mohr*. Illustrating this point, Gillum's Declaration includes images of several subject items "which were confiscated from inmate Damron because they are embellished with images of the swastika embedded in the center of a cross," and adds that Plaintiff Damron has been

permitted to retain Bibles without the swastika. (ECF No. 63-1 ¶¶ 5, 7). Critically, if Plaintiffs are not likely to show that ODRC's policies are invalid, then they have a low likelihood of prevailing on their claims regarding confiscations and punishments under those policies. By the same token, Plaintiffs are not likely to show that Defendants' actions were retaliatory, as opposed to legitimate acts of policy implementation.

To be certain, *Mohr*'s preliminary injunction ruling is not preclusive in this case. The ruling was not a "final" judgment, as is required for *res judicata*. 18A Wright & Miller, Federal Practice & Procedure: Juris. § 4432 (3d ed.). However, "[i]nconsistency is the antithesis of the rule of law." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996). The Court's ruling in *Mohr* was a reasoned decision on the same motion, against the same movants, regarding the same issues; and it was upheld on direct appeal. As such, it is highly persuasive authority. Nothing in Plaintiffs' Motion justifies a different outcome here.

### 3. Remaining Factors

Since Plaintiffs have not established a strong likelihood of success on the merits, the remaining preliminary injunction factors can be addressed in short order. Plaintiffs' theory of irreparable harm is premised on an underlying constitutional violation—which, as stated, they are unlikely to show. *Cf. Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (discussing how, in the First Amendment context, the irreparability factor collapses into the likelihood of success on the merits); *see also Mohr*, ECF No. 57 at 22 (applying same rule).

Regarding harm to others, the Court in *Mohr* noted the "possible harm to ODRC employees and other inmates if Plaintiffs are allowed access to their requested literature and are allowed to possess images of the swastika." *Id*. These interests remain just as important now. Lastly, without a likely constitutional injury, the public interest does not favor an injunction. "[J]udicial

interference is necessarily disruptive" to day-to-day prison operations, "and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context." *Lang v. Thompson*, 2010 WL 4962933, at *7 (W.D. Ky. Nov. 30, 2010) (citing *Clay v. Isard*, 2010 WL 565121, at *2 (W.D. Mich. Feb. 10, 2009)).

### 4. *Closing Observations*

Though the Court has declined to dismiss this action under the duplicative litigation doctrine, Plaintiffs are not entitled to use parallel cases to relitigate matters previously decided against them. As the Court noted in denying Plaintiffs a temporary restraining order: "Plaintiffs will not receive a different outcome here by reviving those claims under a different case caption." (ECF No. 62 at 5). Plaintiffs' disregard of *Mohr* appears deliberate: despite incorporating documents from that case by reference (*see* ECF No. 52 ¶ 3) and acknowledging the adverse ruling (*Id.* ¶ 4), Plaintiffs advance no credible argument on why the Court would decide this preliminary injunction motion differently than it did in *Mohr*. Plaintiffs' tactics here border on the vexatious, and they will not be tolerated as the litigation progresses. With that stern word of caution, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

### IV. CONCLUSION

For the reasons stated, Plaintiffs' Objections (ECF No. 72) are **SUSTAINED IN PART** and **OVERRULED IN PART**. The Magistrate Judge's Report and Recommendation (ECF No. 62) is **MODIFIED** such that Plaintiffs' "ethno-religious discrimination" claims are permitted to remain. In all other respects, the Report and Recommendation is **ADOPTED**. Accordingly, Defendants' Motion to Dismiss (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**.

Per this ruling, Plaintiffs' claims are reduced to the following:

- Plaintiffs' "ethno-religious discrimination" claims;

- Plaintiff Damron's claims against Defendants Aderholt; Bratton; Caradine; Crawford; Emrick; Jennings; Jane/John Does, PSC; and Lambert, pertaining to the withholding of *Rise of the Aryans* and "Werewolfe of the Reich" from Plaintiff Damron;[6] and

- Plaintiffs' retaliation claims against Defendants Aderholt; Ash; Chambers-Smith; Cook; Jane/John Doe Lawyers; Lt. John Doe; Detty; Donaldson; Figgins; Friend; Gillum; Good; Graves; Hill; Huffman; Hunyadi; Letts; Miller; Morgan; Niceswanger; Roberts; Rose; Shanklin; Smith; Shuvallus; Ward; Wiggins; Windom; and Wright.

Plaintiffs' claims pertaining the withholding of *Race Life* from Plaintiff Heid, Plaintiffs' conspiracy claims, Plaintiffs' Equal Protection claims, and Plaintiffs' access to courts claims all are **DISMISSED**. Finally, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 52) is **DENIED**.

IT IS SO ORDERED.

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 1, 2022**

---

[6] The Court notes that Plaintiff Damron's transfer from Trumbull Correctional Institution to Noble Correctional Institution, *supra* note 1, potentially moots these claims against some or all Defendants. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (inmate's claims for declaratory and injunctive relief rendered moot upon transfer from the prison about which he complained). This is because an inmate's transfer ends the alleged violations by the staff of the former prison and renders the court "unable to grant the relief requested." *Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003). Plaintiff Damron's transfer postdated both the Motion to Dismiss and the Report and Recommendation, so neither raises a mootness argument. Accordingly, the Court will leave this issue for another day.